UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                                    )
UNITED STATES OF AMERICA                    )
                                                                    )
v.                                                                  ) Criminal No. 11-CR-10070 (PBS)
                                                                    )
JOSEPH ZOLOT, M.D., et al.                      )
_____)

**DR. ZOLOT AND NURSE PLINER'S OPPOSITION TO THE GOVERNMENT'S
OMNIBUS MOTION *IN LIMINE* TO PRECLUDE OR LIMIT DEFENSE EVIDENCE
AND TESTIMONY**

Defendants Dr. Joseph Zolot ("Dr. Zolot") and Nurse Practitioner Lisa Pliner ("Nurse

Pliner") (together, "Defendants") hereby oppose the Government's omnibus motion *in limine* to

preclude or limit certain evidence and testimony. Generally, the Government's motions appear to

be an improper attempt to prevent Dr. Zolot and Nurse Pliner from effectively defending

themselves. Collectively, those motions wrongly seek to keep Defendants from offering any

evidence at trial apart from the patient histories of the six charged patients. Dr. Zolot and Nurse

Pliner respectfully submit that the Government should not be permitted to so cabin the defense.

Dr. Zolot and Nurse Pliner are entitled to defend themselves, and the Government should not be

permitted to keep them from mounting an effective defense by unnecessarily curtailing the

evidence they may offer at trial. More specifically, for the reasons set forth below, Dr. Zolot and

Nurse Pliner respectfully submit that the Court should deny all of the Government's motions *in

limine*.

    **I.**    **Objective Evidence of Dr. Zolot and Nurse Pliner's Care of Patients is Relevant
and Admissible.**

        **a.**  **Evidence of Dr. Zolot's and Nurse Pliner's Care Overcomes Fed. R. Evid.
401 and is Not Specific Instance Character Evidence.**

The Government's contention that testimony by patients regarding Dr. Zolot and Nurse Pliner's care is irrelevant and constitutes nothing but inadmissible specific instance character evidence does not stand up to scrutiny. Indeed, such evidence goes to the central issues in this case, including whether Dr. Zolot and Nurse Pliner acted in good faith, which is a complete defense to the Government's charges here.

The Government has taken the facially contradictory stance that *it*, alone, is entitled to offer testimony and other evidence of dozens of uncharged patients regarding Dr. Zolot's and Nurse Pliner's care and that the Defendants are precluded from doing so. Indeed, from the inception of this case, the Government has insisted on including in its case the patient care not only of the six charged patients, but also of many others. The Government has even retained three experts to testify about fifty-four (54) patients other than the six charged patients. If the Court were to adopt the Government's reasoning, it would have to reach the conclusion that testimony from  uncharged patients whom the Governments expects will testify negatively about Dr. Zolot and Nurse Pliner's care is relevant, while testimony from the very same types of witnesses about the very same topic is irrelevant (and therefore inadmissible) when presented by the defense.  Such a position is internally contradictory and not credible. Thus, to the extent the Court credits the Government's argument that only evidence about the six charged patients is relevant, it must exclude all of the Government's evidence relating to uncharged patients, including all of the Government's expert testimony relating to those uncharged patients.

Dr. Zolot and Nurse Pliner have a right to defend themselves against the charges the Government brings. Through the testimony of patients, evidence of the patient files themselves, and summary evidence of the review of over 1,400 patient files they intend to demonstrate to the jury how they practiced medicine, in order to provide context for the Government's allegations,

and to show their good faith intent to treat their patients. None of the arguments the Government raises justifies excluding this evidence.

The testimony of the patients Dr. Zolot and Nurse Pliner intend to call easily overcomes the minimal standard of relevance set out in Fed. R. Evid. 401. *See Iacobucci v. Boulter*, 193 F.3d 14, 20 (1st Cir. 1999) ("Relevancy typically presents a rather low barrier to admissibility."); *see also, Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 587, 113 S. Ct. 2786, 2794, 125 L. Ed. 2d 469 (1993) (Rule 401's "basic standard of relevance [] is a liberal one."); *Bielunas v. F/V Misty Dawn, Inc.*, 621 F.3d 72, 76 (1st Cir. 2010) ("A relevancy-based argument is usually a tough sell. The definition of relevance is quite expansive: relevant evidence is "evidence having *any* tendency to make the existence of any fact that is of consequence" more or less probable."). At a bare minimum, the testimony of patients of Dr. Zolot and Nurse Pliner treated is relevant to show how Dr. Zolot's and Nurse Pliner practice operated. Such testimony is further relevant to the question of whether Dr. Zolot and Nurse Pliner acted in "good faith" when treating their patients, a complete defense to the charges against them. *United States v. Hayes*, 794 F.2d 1348, 1351-52 (9th Cir.1986) (finding no error in charge that required jury to determine that physician acted other than in good faith and defined good faith as "an honest effort to prescribe for a patient's condition in accordance with the standard of medical practice generally recognized and accepted in the country"); *United States v. Carroll*, 518 F.2d 187, 189 (6th Cir.1975) (reversing conviction because trial court "did not advise [the jury] that physicians are exempt from the provisions of the drug abuse statute when they dispense or prescribe controlled substances in good faith to patients in the regular course of professional practice"); *United States v. Volkman*, 736 F.3d 1013, 1021 (6th Cir. 2013) ("'Good faith' in this context means good intentions and an honest exercise of professional judgment as to a patient's medical needs. It means that the

defendant acted in accordance with what he [or she] reasonably believed to be proper medical practice."). Indeed, it is the Government's burden to prove beyond a reasonable doubt that Dr. Zolot and Nurse Pliner did not act in good faith in accordance with what they reasonably understood to be proper medical practice. *Hayes*, 794 F.2d at 1351-52; *Carroll*, 518 F.2d at 189. The Government wrongly compares Dr. Zolot and Nurse Pliner to a convenience store owner selling illicit drugs out of the back of their store, where the testimony of other convenience store customers may not be relevant. Omnibus Motion, at 5. That hypothetical fails, and demonstrates the Government's fundamental misunderstanding of the law in this case. A convenience store owner is not a physician licensed by the Drug Enforcement Agency to prescribe controlled substances with a good faith defense to any allegation that he prescribed such controlled substances unlawfully. A convenience store owner can *never* legally distribute controlled substances.

Contrary to the Government's assumption, those patients will not testify merely as to their "belief" about whether Dr. Zolot and Nurse Pliner treated them properly. Rather, Dr. Zolot and Nurse Pliner may call patients to testify about the particulars of their course of treatment with Dr. Zolot and Nurse Pliner. Purely as examples, some of those patients may testify that Dr. Zolot and Nurse Pliner treated their pain without ever prescribing opioids, while others may testify that Dr. Zolot and Nurse Pliner tapered them off, and still others may testify that Dr. Zolot and Nurse Pliner discharged them from the practice in response to concerns related to potential abuse of opioids.

The Government mischaracterizes any testimony from uncharged patients of Dr. Zolot and Nurse Pliner as "specific-instance" character evidence. Omnibus Motion, at 6. It is not. Rather, as described above, Dr. Zolot's and Nurse Pliner's treatment of their witnesses is

relevant both to provide context as to how their practice operated and also to demonstrate that both treated their patients in good faith. In none of the cases to which the Government cites was the testimony offered relevant to the charged conduct apart from reputation evidence. *See Michelson v. United States*, 335 U.S. 469, 477 (1948); *United States v. Benedetto*, 571 F.2d 1246, 1249–50 (2d Cir. 1978); *United States v. Hill*, 40 F.3d 164, 169 (7th Cir. 1994). In *United States v. Benedetto*, for example, a meat inspector was accused of taking bribes, and there certainly is no "good faith" defense to taking bribes.  571 F.2d at 1249–50. One cannot take a bribe in good faith such that it is legal. Unlike all the cases to which the Government cites, the conduct about which Dr. Zolot and Nurse Pliner's patients may testify does not just represent specific instances of good conduct: it is evidence of good faith.

> **b.  Testimony By Dr. Zolot and Nurse Pliner's Patients Will Not Be Unduly Confusing to the Jury.**

There is no risk that the testimony of Dr. Zolot's and Nurse Pliner's patients will confuse the issues in this case or mislead the jury. Indeed, the Government does nothing in their motion but guess at what that testimony might be and assume that the hypothetical testimony will be cumulative and confuse the jury. To the contrary, the probative value of such testimony about the manner in which Dr. Zolot and Nurse Pliner treated their patients, and also their reputation as sound medical practitioners, is not "substantially outweighed" by what the Government styles as "cumulative evidence." *See* FRE 403.

The Government does not know what the testimony of Dr. Zolot's and Nurse Pliner's witnesses will be—indeed, Dr. Zolot and Nurse Pliner themselves do not yet know whom they will call or what the testimony of those witnesses will be. Whom Dr. Zolot and Nurse Pliner call and what the testimony of those witnesses will be depends on what evidence the Government

offers in its case-in-chief, among other factors. Nevertheless, the Government illogically contends that the unknown testimony of witnesses will be cumulative.

Assuming solely for the sake of argument, however, that some of the testimony of Dr. Zolot's and Nurse Pliner's witnesses is cumulative, that is not a basis for excluding that evidence. Indeed, courts are reluctant to exclude evidence under Rule 403, and especially where the basis for such requested exclusion is that the evidence is purportedly cumulative. *Sec'y of Labor v. DeSisto*, 929 F.2d 789, 796 (1st Cir. 1991) (reversing trial court's exclusion of evidence under Rule 403 as cumulative); *United States v. Rivera*, 83 F.3d 542, 547 (1st Cir. 1996) ("Unless trials are to be conducted on scenarios, on unreal facts tailored and sanitized for the occasion, the application of Rule 403 must be cautious and sparing.") (internal citation omitted); *United States v. Finestone*, 816 F.2d 583, 585 (11th Cir. 1987) ("Rule 403 is an extraordinary remedy which should be used only sparingly since it permits the trial court to exclude concededly probative evidence." (citation omitted); *United States v. Lopez-Diaz*, 862 F. Supp. 2d 74, 79 (D.P.R. 2012) ("An exclusion pursuant to Rule 403 is an extraordinary measure and must be used in limited cases because it excludes relevant evidence."). Nothing the Government has suggested here rises to the level of "substantially outweigh[ing]" the highly probative value of the manner in which Dr. Zolot and Nurse Pliner treated their patients.

In any event, to the extent that the Court finds any evidence that Dr. Zolot and Nurse Pliner seek to admit at trial to be so unreasonably cumulative that it outweighs its probative value, the Court can make the determination to exclude that evidence at that time. Dr. Zolot and Nurse Pliner respectfully submit that the Court is unable at this pre-trial stage to make the determination of whether evidence is cumulative, or may otherwise be excluded under Rule 403.

**II.     Defendants Are Not Seeking to Admit Facts Through Their Experts.**

The Government mischaracterizes Dr. Zolot and Nurse Pliner's expert disclosures to claim that Dr. Zolot and Nurse Pliner are attempting to admit facts through their experts. That is not the case. Rather, Dr. Zolot and Nurse Pliner's experts will opine, largely based on patients' files, as to the care that Dr. Zolot and Nurse Pliner provided.

All of the statements the Government seeks to exclude are proper opinions, based on facts to be admitted into evidence. Indeed, the Government has listed most of the documents upon which the experts relied -- i.e., the patient files of the sixty (60) uncharged patients that the Government's experts reviewed -- on its own exhibit list. For example, the Government challenges an opinion, based on facts gathered from the experts' review of Defendants' patient files, that the Defendants "performed a focused or limited physical examination to aide in their ongoing treatment of [their] patients." Based on their unchallenged qualifications and years of experience in the field, and based on their review of the patient files, Dr. Zolot and Nurse Pliner's experts are qualified to opine about whether the physical examination recorded was appropriate. The same is true of the other opinions that the Government seeks to preclude from trial. Based on the patient files, including Dr. Zolot and Nurse Pliner's notes describing patient complaints, the experts concluded that Dr. Zolot and Nurse Pliner prescribed controlled substances "to treat what they understood to be legitimate complaints of pain." Again, based on Dr. Zolot's and Nurse Pliner's own notes in patient files and other information, the experts "did not identify any instance in which either Dr. Zolot or Nurse Pliner prescribed controlled substances when it was actually known that the patient was not using the controlled substances for therapeutic or medical purposes." The experts thus disclose not that they will attempt to offer

facts into evidence, but that based on the patient files they did not *themselves* identify any such instance.

Similarly, Defendants' experts will not testify as to the "mental state or condition that constitutes an element of the crime charged or of a defense." Fed. R. Evid. 704(b). They can and will, however, opine, among many other opinions, based on the patient files and other documents, as to whether the documentation there contains requisite information to support the medical decisions that Dr. Zolot and Nurse Pliner made.

### III.      Expert Testimony Regarding the Need For Pain Management is Relevant.

Expert testimony regarding the nationwide pain management profession, its development, and the need for more pain management care is relevant to the issues before the jury because it not only provides context to the Defendants' practice of pain management, but also helps the jury to understand the profession in general.  Expert testimony, to be admissible under Federal Rule of Evidence 702, must "be relevant to the task at hand and helpful to the jury in its deliberations."  *United States v. Garcias-Morales*, 382 F.3d 12, 18 (1st Cir. 2004).  Such testimony is relevant if it helps to provide context to a defendant's actions which the Government alleges to have constituted a crime.  *See id*. at 19 (upholding admission of expert testimony explaining "typical" drug distribution schemes because it was "relevant to provide context to the jury in evaluating the offenses charged.").  Here, the Government must prove that Dr. Zolot and Nurse Pliner acted as drug dealers to distribute controlled substances for other than "a legitimate medical purpose in the usual course of professional practice."  21 U.S.C. §841(a)(1).  Expert testimony regarding the development of the pain management practice in the United States, including testimony explaining the under treatment of pain in the United States, resulting difficulties faced by pain management physicians, as well as the recent movement by

8

physicians to address pain management will help the jury to understand what practicing in pain management means for a physician.  Specifically, this testimony will help the jury understand the context in which Dr. Zolot and Nurse Pliner were practicing medicine.  Further, knowing that there is a "need for pain management nationwide" is probative of whether Defendants were practicing medicine to help solve this problem, rather than acting as mere drug dealers.

Further, the proposed expert witness testimony regarding the general treatment of pain in the United States is clearly admissible despite any claims the Government makes that it may lead to jury nullification, because it is relevant.  Courts will admit evidence where it is relevant to the issues before the jury, despite a possibility that it may elicit jury nullification.  *United States v. Warner*, 369 F.Supp.2d 924, 936-37 (N.D. Ill. 2005) (denying the Government's motion in limine to exclude evidence based on its potential for jury nullification where the "court [could] envision circumstances in which such evidence may be relevant to the issue of intent or to proving an innocent explanation for seemingly unlawful conduct."); *United States v. West*, 2010 WL 2293392, 2-3 (N.D. Ill. June 2, 2010) (allowing evidence which poses the threat of jury nullification where the evidence was relevant to witness bias and motive).  Indeed, courts will admit evidence that  is far less relevant than the evidence at issue here notwithstanding the risk of jury nullification on the grounds that  "the failure of evidence to relate precisely to an element of a crime doesn't mean it should be excluded."  *West*, 2010 WL 2293392 at 2-3.  Thus, while it is true that courts will exclude evidence which serves <u>solely</u> to inspire jury nullification, this is not the case here.  *United States v. Funches*, 135 F.3d 1405, 1409 (11th Cir. 1998) (holding that trial court properly excluded evidence which may lead to jury nullification where it was "otherwise inadmissible under Rule 402 of the Federal Rules of Evidence."); *United States v. Gorham*, 523 F.2d 1088, 1099 (D.C. Cir. 1975) (barring irrelevant evidence because its sole

purpose would be to inspire jury nullification).  The proposed expert testimony is not being

offered for the purpose of jury nullification, but to educate the jury on the Defendants' pain

management practice and the context within which they practiced. If, however, the Court

remains concerned about the testimony lending to jury nullification, Defendants will not object

to an appropriate jury instruction to safeguard against this possibility.

Finally, if the Court allows expert testimony concerning the nationwide need for pain

management, this does not entitle the Government to introduce evidence relating to the rise of

inappropriate prescribing and overdoses.  Such evidence is inadmissible, irrelevant and unfairly

prejudicial.  First, this type of evidence or line of argument is prohibited under Federal Rule of

Evidence 402 and 702 because it is completely irrelevant to whether Defendants were practicing

legitimate medicine or acting as drug dealers.  Clearly, evidence of whether other medical

professionals acted inappropriately and whether other people who are in no way connected to the

Defendants were overdosing has no relevance to the actions of Defendants and is not probative

in the slightest of whether Defendants, themselves, were acting as drug dealers.  Even if this

Court determines that  this evidence possesses  some minute relevance, it is self-evidently and

highly prejudicial and should therefore be excluded under Federal Rule of Evidence 403. *United

States v. Benedetti*, 433 Fed.3d 111, 118 (1st Cir. 2005) (evidence is excludable where it would

have "an undue tendency to prompt a decision by the factfinder on an improper basis."); *see also,

United States v. Lopez-Lopez*, 282 F.3d 1, 15, (1st Cir. 2002) (Even if evidence is admissible

under Rule 702, "expert testimony still may be excluded under Fed.R.Evid. 403" if it is unfairly

prejudicial.).  If the jury were to hear that the Defendants were prescribing pain medications at a

time when an increasing amount of other doctors were prescribing inappropriate amounts of

medication leading to an increase in overdoses, there is a very real risk that the jury will unfairly

associate the Defendants with these doctors.  Indeed, this evidence is very likely to mislead the

jury into improperly concluding that, because there was a rise in inappropriate prescribing and

overdoses during the same time period, the Defendants necessarily were writing inappropriate

prescriptions and contributing to the rise in overdoses as well.

### IV.    Letters of Support and News Stories About the Defendants Do Not Constitute Hearsay.

The Government wrongly characterizes the letters of support and news stories that the

Defendants seek to introduce at trial as "hearsay" when they are not.  The Defendants do not

seek to offer this evidence for the truth of the matters asserted therein (e.g., that the Defendants

provided excellent medical care or improved the quality of life of certain patients) but, rather,

for the non-hearsay purpose that such letters and stories exist.  The very existence of these

letters and news stories provides necessary context for how the Defendants operated their pain

management practice and therefore goes to the heart of the issue of whether the Defendants were

drug dealers, as the Government alleges, or engaged in the legitimate practice of pain medicine.

When offered for this purpose, this evidence does not constitute hearsay.  *See, e.g., United*

*States v. Santiago*, 560 F.3d 62, 67 (1st Cir. 2009) (evidence of affidavit admissible where not

offered for the truth of content contained therein.).  In particular, such evidence regardless of the

truth of the matter asserted shows that Dr. Zolot and Nurse Pliner's patients wanted to support

and promote Dr. Zolot and Nurse Pliner, and understood that both had provided sound medical

care. The Court should accordingly permit the Defendants to make use of this evidence at trial.

### V.    The Government Should Not Be Permitted to Cherry Pick Certain Statements Made By the Defendants While Concealing Other, Contextual Statements Contained in The Same Documents.

The Government has indicated that it "intends to use at trial specific statements from

exhibits 85 and 102 against Nurse Pliner and Dr. Zolot, respectively, and redact the remainder of

the document because any other statements in the exhibits constitute inadmissible hearsay."
Omnibus Motion, at p. 13.  Such a practice violates the doctrine of completeness codified in
Federal Rule of Evidence 106 and would be fundamentally unfair and prejudicial to the
Defendants.

Under the doctrine of completeness, a party wishing to introduce only a portion of a
recorded statement may be precluded from doing so where partial disclosure out of context
would result in unfairness to the other party.  *See United States  v. Awon*, 135 F.3d 96, 101 (1st
Cir. 1998) ("The doctrine of completeness . . . operates to ensure fairness where a
misunderstanding or distortion created by the other party can only be averted by the introduction
of the full text of the out-of-court statement.")  "The threshold question under Rule 106 is always
one of defining the entirety: that is, if Rule 106 applies, what is it that must be complete?"
*United States v. Boylan*, 898 F.2d 230, 256 (1st Cir. 1990).

The doctrine of completeness -- and notions of fundamental fairness -- bar the admission
of only certain of the Defendants' statements contained in exhibits 85 and 102.  The Government
should not be permitted to cherry pick select statements of the Defendants contained in these
exhibits and use them to the Government's advantage while, simultaneously, concealing from the
jury other, contextual statements of the Defendants contained in the very same document.
Contrary to the Government's contention, it is not simply the introduction of "mere fragments"
or "incomplete portions of statements" that violate Rule 106.  Rather, the doctrine of
completeness is violated where a party seeks to selectively choose certain parts of a document
from a "unit of wholeness" and not the rest.  For example, in *United States v. Millan*, 230 F.3d
431 (1st Cir. 2000), the Court refused to admit only a portion of a statement of facts signed by
the defendant and appended to the defendant's plea agreement.  *Id*. at 435.  The statement of

facts bore its own caption, was signed and dated separately from the plea agreement and, early on in the trial, both parties implicitly agreed that the document stood on its own when it was excised from the plea agreement.  *Id.*  The First Circuit affirmed the district court's ruling, agreeing that the "reasonable unit of wholeness" was the entire statement of facts, as opposed to portions thereof.  *Id.*

Similarly, with respect to exhibits 85 and 102, it cannot credibly be said at this pre-trial stage of the proceedings that isolated statements of the Defendants contained therein constitute a "reasonable unit of wholeness."  The Government's intended use of these exhibits is therefore improper.  At the very least, the Court should reserve judgment on this issue until the time of trial, when the Court and the Defendants will be in a better position to evaluate the context in which the Government seeks to make use of selective portions of these exhibits.

<u>**Conclusion**</u>

For the reasons stated here, Dr. Zolot and Nurse Pliner respectfully submit that the Court should deny the Government's motions *in limine*.

JOSEPH ZOLOT,                          LISA PLINER,
By his attorneys,                      By her attorneys,

/s/ Benjamin J. Wish                   /s/ Laura B. Angelini
Howard M. Cooper (BBO #543842)          Michael J. Connolly (BBO #638611)
Benjamin J. Wish (BBO #672743)          Laura B. Angelini (BBO #658647)
Hillary Lehman (BBO #683657)            John A. Gallagher (BBO #679148)
TODD & WELD LLP                         HINCKLEY, ALLEN & SNYDER LLP
One Federal Street                      28 State Street
Boston, Massachusetts 02110             Boston, Massachusetts 02109
(617) 720-2626                          (617) 345-9000

Dated: May 8, 2014

CERTIFICATE OF SERVICE

 I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non participants on May 8, 2014.

/s/ Benjamin J. Wish
Benjamin J. Wish