**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| UNITED STATES | ) |
|  | ) Criminal Action No. 11-10070-PBS |
| v. | ) |
|  | ) |
| JOSEPH ZOLOT and LISA PLINER, | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

June 6, 2014

Saris, U.S.D.J.

Defendants Joseph Zolot, a physician, and Lisa Pliner, a nurse practitioner, are charged with illegal distribution of methadone, oxycodone, and fentanyl under the Controlled Substances Act, 21 U.S.C. § 841. Defendants previously filed a motion to exclude opinions offered by government experts regarding the standard of medical care for pain management (Docket No. 123). The Court allowed without prejudice defendants' motion with respect to Dr. Edward Michna and Dr. Christopher Gilligan. United States v. Zolot, 968 F. Supp. 2d 411, 433 (D. Mass. 2013) (Docket No. 190).

As the Court stated in Zolot, "The standard of acceptable medical care must ordinarily be established by expert testimony." Id. at 429. While expert testimony cannot be based solely on an ipse dixit, a qualified expert may rely on his experience if he explains "how that experience leads to the conclusion reached,

why that experience is a sufficient basis for the opinion, and how the experience is reliably applied to the facts." Id. at 429-30 (internal citation omitted). The Court found the expert disclosures deficient for not sufficiently articulating the standard of care Dr. Michna and Dr. Gilligan were "applying to assess defendants' conduct as out of the course of usual practice." Id. at 433. The Court permitted the government to "supplement the opinions of both Dr. Michna and Dr. Gilligan, by explaining the medical standard of care upon which their conclusions are based." Id. By contrast, the Court found the initial disclosure of government expert Dr. Gerald Aronoff to be reliable "because it applies the medical standard identified to the evidence elicited from defendants' patient files." Id. at 434. The standard which Dr. Aronoff identified was the Federation of State Medical Boards' ("FSMB") Model Policy for the Use of Controlled Substances for the Treatment of Pain ("Model Policy") which contains seven criteria for proper pain management. Dr. Aronoff specified which specific FSMB Model Policy criteria defendants violated in the case of each patient file Dr. Aronoff reviewed. Id.

On December 9, 2013, the government filed supplemental disclosures for Dr. Michna (Docket No. 197) and Dr. Gilligan (Docket No. 198). In March 2014, Dr. Zolot and Nurse Pliner renewed their joint motion to exclude Dr. Michna's and Dr.

Gilligan's expert reports (Docket Nos. 219, 224).

The December 2013 affidavits remedy the shortcomings of the previous disclosures because they provide support for their conclusions that defendants' treatment and prescription practices "fell outside the usual course of professional practice." Michna Aff. ¶ 31; Gilligan Aff. ¶ 33. The affidavits first articulate the various medical principles and standards on which the doctors base their opinions, including (1) <u>Responsible Opioid Prescribing</u> by Scott Fishman, M.D., which described standards applicable in the relevant time period, Michna Aff. ¶ 5 n.2, and (2) the Commonwealth of Massachusetts Board of Registration in Medicine's Prescribing Practices Policy and Guidelines ("BOR Policy"). Michna Aff. ¶¶ 5-24; Gilligan Aff. ¶¶ 7-26. Notably, the BOR Policy incorporates the seven criteria from the FSMB Model Policy. The affidavits also list several indicators which the experts assert should alert physicians to drug misuse, abuse, or diversion. Michna Aff. ¶¶ 25-29; Gilligan Aff. ¶¶ 27-31.

Next, Dr. Michna and Dr. Gilligan detail patient histories (Dr. Michna reviewed fifteen patient files and Dr. Gilligan reviewed twenty-nine patient files) and specify why the defendants' treatment in each case was outside the usual course of professional practice, listing the particular indicators of misuse, abuse, or diversion which were present in each case, and describing how the defendants' response to each patient's

indicators diverged from proper standards and policies.

For example, with respect to the patient file of D.D., Dr. Michna notes that the patient exhibited multiple indicators of misuse, abuse, or diversion over the course of his treatment. Michna Aff. ¶¶ 34-45. D.D. claimed that all of his medications were stolen twice in one year, once after an alleged robbery, id. at ¶ 35, ¶ 38; twice claimed that he had endured a car accident, requiring further treatment, id. at ¶ 37; and received controlled substances from sources other than defendants' practice, an indicator of "doctor-shopping," id. at ¶ 35. Referencing sources described at length earlier in his affidavit, including the BOR Policy, Dr. Michna notes that the defendants did not reevaluate D.D.'s diagnosis and/or treatment regimen in response to these indicators, or take action to prevent or minimize the patient's potential substance abuse. Id. at ¶ 39. In September 2003, Dr. Zolot noted in D.D.'s file that the patient had "some history of abusing pain medicine in the past," but, according to Dr. Michna's review of the patient's file, Dr. Zolot did not increase scrutiny of the patient's use of controlled substances or refer him for additional evaluation, in contravention of the BOR Policy. Id. at ¶¶ 39-40. Dr. Michna goes on to describe how defendants' medical records for D.D. – which included template language, inconsistent descriptions of the causes of his injuries, and only a passing mention of a history of substance

abuse – did not meet the standards articulated by BOR policy, and amounted to "a systemic failure to properly document the reasoning for the prescription of controlled substances" to D.D. Id. at ¶ 42. Additionally, Dr. Michna states how certain prescription decisions for D.D. were outside the usual course of professional practice. For example, on September 18, 2003, Dr. Zolot noted in D.D.'s file that Dr. Zolot intended to keep D.D. "away from narcotics" but then prescribed fentanyl patches to him (a drug that previously provided no beneficial effects to the patient and created negative side effects, according to Dr. Zolot's earlier medical notes), and seven days later added Actiq (a fentanyl lozenge) to D.D.'s treatment regimen. Id. at ¶ 41.

Defendants complain that the experts failed to provide standards for how to properly respond to indicators of the potential abuse or diversion of controlled substances. While it may be true that there is a range of appropriate options, both experts have the experience and qualifications to state what actions are plainly outside that range, like providing the fentanyl to D.D. in the earlier example.

I decline to review the expert opinions with respect to each patient. To the extent Dr. Michna's and Dr. Gilligan's December 2013 disclosures identify and describe the accepted standards for pain management and prescription of controlled substances, and employ the articulated standards in each expert's analysis of

5

defendants' patient files, they are admissible. Therefore, Defendants' renewed motion to exclude Dr. Michna's and Dr. Gilligan's testimony (Docket Nos. 123, 219, 224) is **DENIED**.

                                               /s/ PATTI B. SARIS
                                               Patti B. Saris
                                               Chief United States District Judge