# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES | ) |
| v. | ) Criminal Action No. 11-10070-PBS |
| JOSEPH ZOLOT and LISA PLINER, Defendants. | ) |

## MEMORANDUM AND ORDER

July 1, 2014

Saris, U.S.D.J.

Defendants Joseph Zolot, a physician, and Lisa Pliner, a nurse practitioner, are charged with illegal distribution of methadone, oxycodone, and fentanyl under the Controlled Substances Act, 21 U.S.C. § 841. They are also charged with conspiracy. On the seventh day of trial, government witness Robert Ferrara, a former patient, testified, *inter alia*, that on two occasions he was too sick to come into Dr. Zolot's office for an appointment, so Dr. Zolot brought the prescriptions out to Ferrara in the parking lot. Defendants' counsel cross-examined Ferrara on this point, questioning whether Ferrara had ever relayed this narrative to the government before. While Ferrara didn't remember if he had testified on this point before the grand jury, he did recall telling members of the prosecution team that he received prescriptions from Dr. Zolot in the parking lot.

Defense counsel stated at sidebar after the close of cross-

examination that they did not receive information about Ferrara's account in any governmental disclosures and were surprised by his testimony. The government concedes that Ferrara's account was not disclosed to defense counsel. Defense counsel moved to strike this portion of Ferrara's testimony based on the prosecution's failure to disclose prior statements of a witness pursuant to the Jencks Act, 18 U.S.C. § 3500. At the Court's request, the prosecution produced the original handwritten notes from the government's two interviews with Ferrara. A Drug Enforcement Agency investigator took notes at these meetings, which occurred on March 1, 2013 and April 4, 2014. The defense was given a copy.

The Jencks Act, 18 U.S.C. § 3500, "is designed to provide the defense access to impeachment material." United States v. Arboleda, 929 F.2d 858, 862 (1st Cir. 1991). Section 3500(b) requires the United States to produce any "statement" of a government witness relating to the subject matter of that witness's testimony.[1] The Act defines statements as:

> (1) a written statement made by [the] witness and signed or otherwise adopted or approved by him;
>
> (2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or

---

[1] The pretrial order in this case required the parties to disclose these statements by April 11, 2014, two months before this trial commenced (Docket No. 214).

>     (3) a statement, however taken or recorded, or a
>     transcription thereof, if any, made by said witness to a
>     grand jury.

18 U.S.C. § 3500(e). The defendants agree that the investigator's notes do not qualify as "statements" under either § 3500(e)(1) (statements written by or adopted by the witness) or § 3500(e)(3) (grand jury testimony), but contend that the notes qualify as "substantially verbatim recitals" of Ferrara's statements during the interviews with law enforcement.

Supreme Court case law instructs courts to read § 3500(e)'s definitions of statements consistent with Congress's concern that "an expansive reading of Jencks would compel the undiscriminating production of agent's summaries of interviews regardless of their character or completeness." United States v. Palermo, 360 U.S. 343, 350 (1959). Congress felt it "grossly unfair" to impeach a witness with statements "which could not fairly be said to be [his] own, rather than the product of the investigator's selections, interpretations, and interpolations." Id. To "avoid these dangers," the Supreme Court limited § 3500(e)(2) to "only those statements which could properly be called the witness's own words." Id. at 350-52.

This does not mean that the statements need to be taken down by a stenographer. Rather, "'longhand writing which the court found fairly followed the witness's words, subject to minor inconsequential errors' would fall within (e)(2)." United States

3

v. Neal, 36 F.3d 1190, 1198 (1st Cir. 1994) (remanding for an evidentiary hearing where record indicates that trial court considered only subsection (e)(1) and not possibility that subsection (e)(2) might apply to police officer's notes).

Pursuant to First Circuit guidance that trial courts should conduct "an independent investigation" of materials challenged under Jencks, I reviewed the investigator's notes and took testimony from the DEA investigator at an evidentiary hearing. United States v. Landron-Class, 696 F.3d 62, 73 (1st Cir. 2012). Based on her credible testimony and the notes, I make the following findings of fact. The notes dated March 1, 2013 and April 4, 2014 were made contemporaneously with the meetings that occurred on those dates. Both sets of Investigator Zeoli's notes are handwritten and consist of short phrases (e.g., "probation officer - house visits") and short sentences (e.g., "doesn't recall ever paying Dr. Z for those visits"). The notes, written in longhand, capture the gist of Ferrara's statements during the interview, with some words and phrases recorded verbatim. For example, Investigator Zeoli testified that the phrase "dope sick" would have come directly from Ferrara. The notes contain some inaccuracies due to the investigator's note-taking. For example, the notes read, "Dr. Z would walk out to car w/ Rx - couldn't wait in wtg room 2-3 yrs." Investigator Zeoli testified that "yrs" should have been "hrs," as she recalls Ferrara stating that

he could not wait in the waiting room for two or three hours (not years). I find that the notes were not read back to Ferrara or shown to him, and were not adopted by him. The March 2013 notes were not reviewed with Ferrara at the April 2014 meeting.

I find that the investigator's notes are not "statements" as defined in the Jencks Act. While they were made contemporaneously during the interview, the notes cannot fairly be called "continuous, narrative statements made by the witness recorded verbatim, or nearly so." Palermo, 360 U.S. at 352. The investigator testified that her notes do not reflect the exact words and phrases used by Ferrara. Cf. United States v. Newton, 891 F.2d 944, 954 (1st Cir. 1989). While the investigator's notes may contain some scattered notations that quote phrasing used by Ferrara, on the whole, it is "neither structured nor phrased as a verbatim report." United States v. Bennett, 75 F.3d 40, 47 (1st Cir. 1996) (finding no clear error in district court's refusal to order discovery of interview report made after witness interview containing "only a few isolated direct quotations" from the witness); see also United States v. Gross, 961 F.2d 1097, 1105 (3d Cir. 1992) ("Although . . . the notes may occasionally reflect precise phrases used by the witness, the presence of such brief quotations is inadequate to qualify the notes as Jencks material.").

Investigator Zeoli's notes are more properly characterized

as a selective and paraphrased version of the facts as recounted to the interviewers, with occasional quotes. <u>United States v. Sepulveda-Hernandez</u>, – F.3d –, 2014 WL 1758445, at *9 (1st Cir. May 2, 2014) (finding no abuse of discretion in trial court's determination that reports created following government interviews did not qualify as "substantially verbatim witness accounts"). The defendants' motion to strike certain portions of Ferrara's testimony is **DENIED**.

                                         /s/ PATTI B. SARIS
                                         Patti B. Saris
                                         Chief United States District Judge