UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Crim. No.  11cr10070-PBS |
| ) | |
| JOSEPH ZOLOT (1) ) | |
| LISA PLINER (2) ) | |

### GOVERNMENT'S MOTION *IN LIMINE* TO EXCLUDE TESTIMONY OF DR. AMITAVA DASGUPTA

#### INTRODUCTION

Defendants Zolot and Pliner seek to introduce the testimony of an additional expert witness, Dr. Amitava Dasgupta, on the issue of drug tests.  Per this Court's order, on February 27, 2015, Defendants' filed "notice" of Dr. Dasgupta's proposed testimony.  Defendants' "notice" fails (1) to identify the opinions that Dr. Dasgupta will allegedly provide or (2) to identify the materials on which Dr. Dasgupta allegedly relied[1] in forming his opinion.

Defendants should be precluded from introducing the testimony of Dr. Dasgupta because (1) Defendants have failed to provide appropriate notice of the proposed testimony as required

---

[1] The government uses the term "allegedly" as the last time Defendants identified materials were relied upon by their experts (Dr. Warfield and Dr. McCarberg) Defendants unambiguously represented that both experts had relied upon material from a group of 1400 patient files. Pretrial, this Court ordered that "[t]o the extent the defendants have not identified the 1400 files reviewed by Drs. Warfield and McCarberg, the defendants must disclose the identity of the files to the government forthwith."  *United States v. Zolot*, 968 F.Supp.2d 411, 432 n.36 (D.Mass 2013).  Defendants thereafter provided the government with a list of approximately 1400 patient files.  The government expended significant time and resources in the months leading up to trial reviewing the group of 1400 patient files identified by Defendants only to have Defendants contend in the middle of the government's cross-examination of Dr. Warfield that Dr. Warfield had not actually reviewed the 1400 files, as represented to the government and the Court, and, thus, she could not be questioned as to these files.

by Rule of Criminal Procedure 16, and (2) the proposed testimony does not satisfy the requirements of Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 597 (1993).  The government requests a hearing on these two issues.

## ARGUMENT

### I. DEFENDANTS HAVE NOT PROVIDED ADEQUATE NOTICE OF THE PROPOSED EXPERT TESTIMONY

Pursuant to Rule of Criminal Procedure 16(b)(1)(C), Defendants are required to provide expert notice which describes "the witness's opinions, the bases and reasons for the opinions, and the witness's qualifications."  Defendants' notice of their supplemental expert witness does not come close to meeting this standard as they have failed to (1) set forth the witness's opinions and (2) the bases and reasons for the opinions.  As a result, Defendants' expert should be precluded from testifying, especially in light of the fact that trial is set to begin in four weeks, which significantly limits the government's ability to prepare for a completely new expert witness.

Defendants' "notice" does not set forth any description of their expert's actual opinion.  Rather, the notice merely provides general topics which may be covered by the expert, including (1) "Overview of Therapeutic Drug Testing"; (2) "The Reliability of Drug Tests"; and (3) "The Interpretation of Drug Test Results."  There is not a single reference as to what the expert's actual opinion is on any of these topics or how the expert's testimony relates to the facts of the case at hand.  The notice provided by Defendants is effectively useless for the purposes of trial preparation.

For example, in the area of the "Interpretation of Drug Tests," Defendants note that their expert is "expected to testify and opine about the correct interpretation of various results and

phrases that appear in the drug tests ...." *See* Def. Notice at p.10. Defendants fail to set forth even a cursory outline of what these alleged "correct interpretations" are. Along these lines, as to the basis for any alleged expert testimony, Defendants state that their expert's testimony will be based "on his review of documents in this case and in particular of documents from the patient files of Dr. Zolot and Nurse Pliner related to patient drug testing." *See* Def. Notice at p.11. *Defendants have not identified a single patient file allegedly used by the expert by name, much less the particular documents on which their expert is allegedly relying in providing his testimony.*

Defendants' defective notice provides the government with insufficient information to prepare for trial, including being able to adequately review whether the proposed expert testimony satisfies *Daubert*. Defendants should be precluded from calling their new expert given their defective notice.

## II. DEFENDANTS' PROPOSED EXPERT TESTIMONY SHOULD BE PRECLUDED UNDER *DAUBERT*

Given Defendants' disclosure, the Court should preclude Defendants' expert from testifying under *Daubert*. As this Court noted earlier in this case, an expert may provide testimony "'if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) ***the witness has applied the principles and methods reliably to the facts of the case***.'" *Zolot*, 968 F.Supp.2d at 417 (quoting Rule of Evidence 702) (emphasis added). "The trial court must determine whether the expert's testimony 'both rests on a reliable foundation and is relevant to the task at hand' and whether the expert is qualified." *Id*. (citation omitted). As noted by the First Circuit, the "proffered expert testimony must be relevant, 'not only in the sense that all evidence must be relevant, but also in

3

the incremental sense that the expert's proposed opinion, if admitted, likely would assist the trier of fact to understand or determine a fact in issue.'" *United States v. Vargas*, 471 F.3d 255, 261 (1st Cir. 2006) (citation omitted).

While the government is unable to properly review the proposed expert's testimony given the cursory nature of Defendants' expert notice, the third prong of the *Daubert* standard has not been met as Defendants have failed to describe how their expert might apply any principles "to the facts of the case at hand." To the contrary, Defendants' proposed expert appears to be testifying as to general principles concerning drug testing without mooring them to the facts of the case.

For example, Defendants' expert is apparently prepared to testify as to the "inability of various types of drug tests to detect the presence or absence of specific drugs, like oxycodone …." *See* Def. Notice at p.9. This proposed testimony has no relevance to the case unless it is anchored to the specific drug tests that were being ordered by Defendants and how Defendants were using these tests. At this time, Defendants have failed to demonstrate that their expert reviewed how drug tests were used and interpreted by Defendants, and *not* some hypothetical practitioner.

As another example of this issue, Defendants contend that their expert will testify as to "the meaning of terms that appear on drug test results, such as 'detected,' 'not detected,' and 'prescribed low' …." *See* Def. Notice at p.10. This appears to be a reference to terms in certain drug tests in patient files. Again, the expert's interpretation of these terms is not relevant unless it is tied to Defendants' interpretation of these terms. As previously discussed in pleadings, there is a March 2004 drug test in the file for P.L. in which drugs prescribed to P.L. (including

4

benzodiazepines and oxycodone) were found to be "prescribed low" and "not detected."  In response to these drug test results, Zolot wrote the following in a medical note:

> TREATMENT PLAN:  *Considering that the patient's urine came back negative for any kind of medication I prescribed him*, I decided to arrange another urine screening for better assessment of his pain management.  The patient, however, refused to take urine test and he left my office without even picking up his prescription.  At this time, *I assume that he does not take medicine or he potentially may be diverting* that and I do not think I am planning to see this patient in the nearest future. (emphasis added)

Thus, through their own admissions, Defendants interpreted the applicable terms "prescribed low" and "not detected" as denoting a negative, and failed, drug test.  How an "expert" in toxicology might interpret such test results is irrelevant to the issue of how Defendants – pain management practitioners – did so.  The issue at trial is how Defendaants, not a toxicologist, interpreted and responded to the drug tests they administered.  Allowing Dr. Dasgupta to offer his opinions about drug tests in general, unmoored to the facts of the case, would only serve to confuse the jury, not assist it.  *Daubert* and Rule 702 prevent such a result, and their proscription should be followed here.

## CONCLUSION

In light of the above, Defendants should be precluded from introducing the proposed expert testimony by Dr. Dasgupta.  The government requests a hearing on this matter.

Respectfully submitted,<br>
CARMEN M. ORTIZ<br>
United States Attorney

Date: March 2, 2015                              By: */s/ Michael J. Crowley*
                                                     MICHAEL J. CROWLEY
                                                     ERIC P. CHRISTOFFERSON
                                                     MIRANDA HOOKER
                                                     Assistant U.S. Attorney

5

## **CERTIFICATE OF SERVICE**

  I, Michael J. Crowley, Assistant United States Attorney, do hereby certify that this document, filed through ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and that paper copies will be sent to those indicated as non-registered participants on this date.

                /s/ *Michael J. Crowley*
                MICHAEL J. CROWLEY
                Assistant U.S. Attorney